KATE A. WRIGHT, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed May 4, 1920.

1. INSURANCE: Life Insurance: Policy Not Void for Failure to Pay Premiums. An industrial life insurance policy which by its terms could be revived in fifty-two weeks after the payment of any premium, upon presentation of evidence of the insurability of insured, is not necessarily void for failure to pay premiums when due.

2. ————: ————: Death of Insured: Acceptance of Overdue Premiums Without Knowledge: Not Waiver. Where insured died while the insurance was lapsed, and prior to the last payment of premiums on the policy, the death of insured being unknown to the insurer the one acceptance of the payment of premiums could not constitute waiver of the revival of the insurance.

3. ————: ————: ————: Acceptance of Overdue Premiums Without Requiring Proof of Health: Forfeiture: Waiver: Question for the Jury. The acceptance of payment of premiums overdue after the grace period had expired without requiring evidence of the insurability of insured, the payment and acceptance of such premiums is evidence of a waiver of the lapsing of the insurance as well as evidence of the waiver of proof of the insurability of the insured upon a revival of the insurance, and when occurring more than one time, is evidence sufficient to take the case to the jury as to whether or not the defendant waived the lapsing of the insurance.

4. ——: ——: Evidence: Acceptance of Overdue Premiums: Waiver. Where the defense to an action on an industrial insurance policy was that the policy had lapsed for nonpayment of premiums, evidence that the insurer had on previous occasions accepted payment of overdue premiums without requiring evidence of the insurability of the insured and the acceptance of the premiums on the policy in suit as well as the acceptance upon similar policies issued by insurer upon other members of the beneficiary's family, the premiums of which were paid at the time by the beneficiary, and the premiums upon all of said policies being overdue, and seven weeks after the expiration of the grace period tended to show that as between the beneficiary and the insurer, insurer was waiving the provisions of the policy lapsing the insurance for nonpayment of premiums within the grace period, and was sufficient to warrant submitting to the jury the issue of waiver by the insurer of the lapse of the policy.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. John W. Calhoun*, Judge.

AFFIRMED.

*Fordyce, Holliday & White* and *Walter R. Mayne* for appellant.

*William J. Tully* of counsel.

(1) The trial court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence, for: (a) There was no evidence presented from which the jury could reasonably infer that defendant actually intended to waive avoidance of the insurance for failure to pay the premiums in arrears, prior to the death of insured, nor was there any evidence upon which to base an estoppel of defendant to assert such forfeiture. Thompson v. Fid. Mut. L. Ins. Co., 116 Tenn. 557, 92 S. W. 1098, 6 L. R. A. (N. S.) 1039; Suess v. Life Mut. Ins. Co., 193 Mo. 564, 574; James v. Mut. Reserve Fund Life Ass'n, 148 Mo. 1, 12; Smoot v. Bankers Life Ass'n, 138 Mo. App. 438, 468; Ashbrook v. Phoenix Mut. Life Ins. Co., 94 Mo. 72, 78; Sick v. Life Ins. Co., 79 Mo. App. 609; Barnes v. Fire Ins. Co., 30 Mo. App. 539, 549; Stiepel v. Life Ass'n,

55 Mo. App. 224; Reichenbach v. Ellerbe, 115 Mo. 588, 594. (b) Plaintiff's evidence leaves no room for doubt that her recovery in this case would effectuate a fraud on defendant. Reichenbach v. Ellerbe, supra. (2) The court erred in admitting testimony on the part of plaintiff regarding other contracts of insurance between plaintiff and defendant not involved in this suit and on the lives of persons other than the insured named in the policy in suit; for no waiver on the part of defendant, express or implied, was established as to such policies; even if waiver had been shown as to such other policies, or any of them, that fact would not have established or tended to prove a waiver as to the particular policy in suit. Smoot v. Bankers Life Ass'n, 138 Mo. App. 468, supra; 1 Morse on Banks (5 Ed.), sec. 9, p. 23. (3) The court erred in giving plaintiff's instruction No. 2 regarding waiver, for: (a) The instruction is not supported by the evidence as to waiver. McQuillin Inst. to Juries, Civil Cases, Sec. 95; Home Bank v. Towson, 64 Mo. App. 97, 100. (b) The instruction is broader than the evidence. State ex rel. v. Ellison, 270 Mo. 645, 653. (c) The instruction purports to cover the issue of waiver, but ignores the evidence of the defense in point. Peoples Bank v. Baker, 193 S. W. 632, Syll. 2. (d) The instruction omits an essential element of waiver established by a course of dealing. James v. Mut. Reserve Fund Life Ass'n, 148 Mo. 1, 12, supra; Smoot v. Bankers Life Ass'n, 138 Mo. App. 438, 468, supra; Thompson v. Fidelity Mut. L. Ins. Co., 116 Tenn. 557, 92 S. W. 1098, 6 L. R. A. (N. S.) 1039, supra.

*James J. O'Donohoe* for respondent.

(1) Plaintiff established a prima-facie case by introducing the policy in evidence and proving that the insured was dead. Keily v. K. of F. M., 179 Mo. App. 608; Gooden v. M. W. of A., 194 Mo. App. 666; Peterson v. Railroad, 265 Mo. 480. The burden of showing whether any premium was unpaid at the death of the

insured was one defendant. In this case defendant established that all premiums were paid. Harris v. Ins. Co., 248 Mo. 304. And, by its course of dealing, defendant waived the prompt payment of premiums. In this State any act done after the breach of conditions, which recognizes the validity of the policy is a waiver of the right to avoid it for that reason. Zahm v. Royal Fraternal Union, 154 Mo. App. 71-78; Madsen v. Ins. Co., 185 S. W. 1168; Wagaman v. Ins. Co., 110 Mo. App. 616-621; McMahon v. Maccabees, 151 Mo. 522-537; Thompson v. Ins. Co., 52 Mo. 469-472. And the same rule obtains in the sister States. Morgan v. Ins. Co., 42 Wash. 10; Replogle v. Ins. Co., 132 Ind. 360; Cannon v. Ins. Co., 53 Wis. 585; Schreiber v. Ins. Co., 43 Minn. 367; Ins. Co. v. Lansing, 15 Nebr. 494; Ins. Co. v. Norton, 96 U. S. 234; Prentice v. Ins. Co., 77 N. Y. 483; Viele v. Ins. Co., 26 Iowa, 55. Where it appears that the prompt payment of premiums will not be insisted upon, payment can be made of a premium after it is due and even though the insured may be dead. Goedecke v. Ins. Co., 30 Mo. App. 601; Froelich v. Ins. Co., 47 Mo. 406; Mayer v. Ins. Co., 38 Iowa, 304; Ins. Co. v. Duvall, 20 Ky. L. 441; Reiz v. Supreme Council, 163 Wis. 427. (2) The court committed no error in admitting testimony concerning the custom of payment of premiums on other policies on the lives of the several members of her own family. Furthermore, collecting the premiums precludes the defendant from insisting upon a forfeiture of the policy; and "its tender (of premiums) into court at the time of the trial would come too late, and avail it nothing." Jaggi v. Ins. Co., 191 Mo. App. 384 (cases cited). (3) The court committed no error in giving plaintiff's instruction No. 2, for it correctly expressed the law. Moreover, under the evidence in this case, it would be proper for the court, as a matter of law, to hold that there had been a waiver of prompt payment of premiums. Wacker v. Ins. Co., 213 S. W. 869, and cases there cited. Besides, plaintiff was entitled to

a directed verdict; and if so, instructions "cut no figure, since in such event the only possible result, under the law and the evidence, was reached by the jury." Brunswick v. Ins. Co., 213 S. W. (Mo.), 51.

BARNES, C.—This suit was instituted before a Justice of the Peace of the City of St. Louis on February 8, 1916. It is based upon a life insurance policy of the "industrial" or "prudential" class, issued by defendant March 24, 1913, on the life of Sylvia Wright, the fourteen year old daughter of plaintiff, the beneficiary therein named. The premium was ten cents per week, and the amount of the insurance $260. The insured died November 10, 1915.

The statement filed with the justice was conventional in form, and asked judgment for the full amount of the insurance, interest, ten per cent. of the amount due on the policy as damages, and a reasonable attorneys fee not exceeding one hundred dollars. No pleadings were filed by defendant. Plaintiff had judgment.

The case was appealed to the Circuit Court. Prior to the trial de novo therein, defendant paid into court $13.80 as a tender back of all premiums received. The trial resulted in a verdict for plaintiff for the amount of the insurance, interest, damages and attorneys fees, totaling $384.40. Judgment was entered, accordingly. All the necessary intermediate steps were taken to preserve certain alleged errors for review by this court.

Appellant's first contention is, that the trial court erred in refusing to give its instruction in the nature of a demurrer to the evidence, offered at the close of the case. Altho this instruction refers to a judgment instead of a verdict, we will treat it as though proper in form.

Respondent introduced in evidence in the trial court: the policy; that insured had died since its issue; the Premium Receipt Book receipting for all premiums two weeks beyond date of insured's death; proof of her claim, as beneficiary failure of appellant to pay her

claim; and the value of her attorney's services in prosecuting this suit.

Appellant's demurrer goes below the surface of this statement of an apparently perfect prima-facie case. It is directed towards the terms of the policy pertaining to an avoidance of the insurance for failure to promptly pay premiums, and that the payment of premiums after the insurance had lapsed and after the death of the insured did not revive the insurance, and that there was no evidence from which the jury could reasonably infer defendant intended to waive lapsing of the insurance for failure to pay the premiums in arrears prior to insured's death.

It is in this view of the case that we set out such terms of the policy and so much of the evidence as seems germane. The policy reads:—

"In consideration of the payment of the premium mentioned in the schedule below, on or before each Monday, doth hereby agree, subject to the conditions below on page 2 hereof, each of which is hereby made a part of this contract and contracted by the insured and beneficiary to be a part hereof, and with the privileges and concessions to policy-holders on pages 2 and 3 hereof, which are hereby made part of this contract, to pay, upon receipt of proofs of the death of the insured, made in the manner, to the extent and upon the blanks required herein, and upon surrender of this policy and all receipt books, the amuont stipulated in said schedule.
. . ."

"Amount of insurance $260.

One-half only of the above sum payable if death occur within six calendar months from date, and the full amount if death occur thereafter.

*Conditions.*

". . . This policy contains the entire agreement between the company and the insured and the holder and owner hereof. Its terms cannot be changed or its conditions varied, except by a written agreement, signed by the president or secretary of the company, therefore,

agents (which term includes superintendents and assis-. tant superintendents) are not authorized and have no power to make, alter or discharge contracts, waive forfeitures, or receive premiums on policies in arrears more than four weeks, or to receipt for the same in the receipt book, and all such arrears given to an agent shall be at. the risk of those who pay them, and shall not be credited upon the policy, whether entered in the receipt book or not.

If this policy be assigned or otherwise parted with, or if any erasure or alteration be made herein, except by the endorsement signed by the secretary, or if any premium shall not be paid when due, this policy shall be void. And it is agreed that the foregoing provision which avoids the policy in case any premium shall be overdue, shall not be considered in any respect waived by any act of grace by the company in the acceptance of overdue premiums on this or any other policy. . . .

If this policy is, or shall become, void, all premiums paid shall be forfeited to the company, except as provided in the preceding paragraph and under ''Privileges and Concessions to Policyholders.''"

*Privileges and Concessions to Policyholders.*

''. . . Incontestability. This policy shall be incontestable after two years, except for fraud or mis-. statement of age.

Grace Period. A grace of four weeks shall be granted for the payment of every premium after the first during which time the insurance shall continue in force. If death occur within the days of grace, the overdue premiums shall be deducted from the amount payable hereunder, but neither this concession nor the acceptance of any overdue premium shall create an obligation on the part of the company to receive premiums which are in arrears over four weeks.

Revival. Should this policy become void in consequence of non-payment of premium, it may be revived, if not more than fifty-two premiums are due, upon payment of all arrears and the presentation of evidence

satisfactory. to the company of the sound health of the insured.    . . ."

Defendant had issued separate policies upon the lives of plaintiff's husband and six children. The agent of defendant that solicited the policy' in suit collected all premiums that were paid thereon. These premiums were paid irregularly, that is, sometimes payment was made on their due date, in advance, during. the "grace period" and after the "grace period," and sometimes there was payment covering premiums overdue and not due.

Plaintiff paid overdue premiums on Oct. 8, 1914; Dec. 4, 1914; April 20, 1915; Aug. 23, 1915; Nov. 10, 1915, which were 3 days, 4 days, 1 day, 7 days, and 7 weeks respectively, after the "grace period" applicable thereto. On Nov. 10, 1915, plaintiff paid $9.10 which paid the premium on the policy in suit overdue and two weeks in advance, and on six other policies of other members of her family. No presentation of evidence of the sound health of any of the insured was ever tendered or requested.

Plaintiff testified that defendant's agent called regularly to collect premiums on a policy on plaintiff's husband, when so doing he repeatedly sought to collect premiums, overdue on all policies, and that when collecting premiums on Nov. 10, 1915, told her the policies had not lapsed.

The insured died Nov. 10, 1915, a few hours prior to the payment of premium on that day. Defendant did not know of it, and plaintiff acknowledges that she knew insured had taken poison, but did not know she was then dead.

On Nov. 11, 1915 plaintiff made her statement of claim against defendant, which was witnessed by defendant's agent. The premiums on this policy paid Nov. 10, 1915, do not seem to have been tendered back until the case reached the Circuit Court, when all premiums received on said policy were tendered.

At the trial, plaintiff on cross examination testified:

"Q. Didn't he tell you your policy had lapsed for nonpayment of premium? A. No, Sir; I don't think he did. Q. He never? A. He didn't mention lapse to me. Q. You knew it was necessary to pay the back premiums before the policy could be reinstated? A. I have done it before and I guess he trusted me this time."

Counsel for defendant at the trial stated that his contention was: "This policy had lapsed and was not waived while the insured was living, and that is the issue in this case;" and again: "we don't contend it (referring to the policy) was void, but it was lapsed after the non-payment of premiums."

Counsel for defendant were correct in not contending that the policy was void, because by the very terms of the policy, the insurance therein contemplated, could be revived in 52 weeks after the payment of any premium, upon presentation of evidence of the insurability of insured. Further, a policy is not necessarily void for failure to pay premiums when due. [Freise v. Metropolitan Life Ins. Co., 206 Ill. App. 404.]

If the insured died while the insurance was lapsed and prior to the last payment of premiums on the policy plaintiff could not recover, because the death of insured was unknown to defendant, and there would not have been an intentional relinquishment of a known right, and the one acceptance of the payment of premiums could not constitute waiver of revival of the insurance. [Herstmann v. Capital Life Ins. Co. of Colorado, 194 Mo. App. 434, 184 S. W. 1164; Goedecke v. Metropolitan Life Ins. Co., 30 Mo. App. 601, l. c. 605; Suess v. Imperial Life Ins. Co., 193 Mo. 564, 91 S. W. 1041; James v. Mutual Reserve Fund Life Ass'n, 148 Mo. 1, 49 S. W. 978; Thompson v. Fidelity Mut. Life Ins. Co., 116 Tenn. 557; Nebergall v. Prudential Ins. Co., 193 Ill. App. 189.]

By reference to the portions of the policy noted, it is to be observed; that the distinguishing feature between payments of premiums when no lapse of the in-

surance is claimed, from payment thereof whom a lapse is claimed, is to be found in the "revival" clause, and consists of the presentation of evidence satisfactory to the company of the sound health of the insured.

It follows, that when the defendant accepted payment of premiums overdue and after the "grace period" had expired, without requiring evidence of the insurability of the insured (nothing more appearing), the payment and acceptance of such premiums is evidence of a waiver of the lapsing of the insurance, as well as evidence of the waiver of proof of the insurability of the insured upon a revival of the insurance, and when occurring more than one time, is evidence sufficient to take the case to the jury as to whether or not the defendant waived the lapsing of the insurance. [Madsen v. Prudential Insurance Co., 185 S. W. 1168 (Mo. App.); Freise v. Metropolitan Life Ins. Co., supra; Nebergall v. Prudential Ins. Co., supra; Jaggi v. Prudential Ins. Co., 191 Mo. App. 384, 177 S. W. 1064; Hawkins v. Woodmen Accident Ass'n, 204 S. W. 566 (Mo. App.).]

The demands of the agent for the payment of premiums overdue beyond the "grace period" and at times when the premiums were not in fact paid, constitutes additional evidence of waiver. [Madsen v. Prudential Ins. Co., supra.]

The receipt on Nov. 10th, of the premiums upon some six other similar policies, issued by defendant upon other members of plaintiff's family, the premiums of which were paid by plaintiff, as well as the acceptance of the premiums upon the policy in suit, and the premiums upon all of said policies being overdue seven weeks after the expiration of the "grace period," and without requiring insurability of the respective insured to be shown, tended to show that as between plaintiff and defendant, defendant was waiving the provisions of the policy lapsing the insurance for nonpayment of premiums within the "grace period." And thus relieves us from all discussion of the proposition,

that having accepted overdue premiums three days; four days; one day; and seven days after the expiration of the "grace period" would not be evidence of a waiver of the lapsing of the insurance when paid seven weeks after the expiration of the "grace period." [Nebergall v. Prudential Life Ins. Co., supra.]

There was some evidence of another and distinct waiver of the right of the defendant to defeat plaintiff's recovery; that is, by retention of the premium paid, after it had knowledge of the death of the insured, and until the case reached the circuit court. [Jaggi v. Prudential Ins. Co., supra; Davis v. Knights and Ladies of Security, 196 Mo. App. 485, 196 S. W. 97.]

We are, therefore, of the opinion that it was incumbent upon the trial court to overrule the demurrer.

No point is made against plaintiff's first instruction, which dealt with the measure of her recovery. The only other instruction given for plaintiff reads as follows:—

"The court instructs the jury that although you may find and believe from the evidence that at the time Sylvia Wright, the insured, died, more than four weekly premiums were overdue on said policy, yet if you further find and believe from the evidence that it was the custom of the defendant, through its agent, to receive premiums on said policy which were in arrears over four weeks without requiring satisfactory evidence of the sound health of the insured; and if you further find and believe that thereby the defendant intended to and did waive the prompt payment of premiums on said policy within the four weeks grace period, and that the defendant thereby intended to and did waive the presentation of evidence satisfactory to defendant of the sound health of the insured when the premiums were in arrears over four weeks, then you may find that said policy was in force and effect at the time Sylvia Wright, the insured, died, anything in the policy to the contrary notwithstanding."

This instruction is assailed, but in the view of the case indicated above, we think that it contains no reversible error.

In view of the above and foregoing the Commissioner recommends that the judgment of the trial court be affirmed.

PER CURIAM:—The foregoing opinion of BARNES, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed.

*Reynolds, P. J., Allen* and *Becker, JJ.,* concur.